IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Brittany Skeans, as mother and next friend of M.S., a minor, Shane Skeans, and Brittany Skeans, individually,<br><br>    Plaintiffs,<br> v.<br><br>Lendlease (US) Public Partnerships LLC, AMCC Development Management LLC, Atlantic Marine Corps Communities LLC, d/b/a Atlantic Marine Corps Communities at Tri-Command, f/k/a Tri-Command Managing Member, LLC, a/f/k/a Tri-Command Military Housing LLC, and AMCC Property Management LLC<br><br>    Defendants. | Case No. 9:24-cv-03049-RMG<br><br><br>**ORDER AND OPINION** |

   Before the Court is Defendants' Motion to Dismiss. (Dkt. No. 12-1). Plaintiffs responded in opposition to the motion (Dkt. No. 18), and Defendants replied (Dkt. No. 23). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

  **I. Introduction**

   Plaintiffs are former residents of the Laurel Bay military housing community in Beaufort, South Carolina who allege various claims arising from their lease of 69 Beech Street (the "Rental Property"). Plaintiffs began a one-year Lease of the Rental Property on June 8, 2021, which they renewed prior to vacating the property in August 2023. (Dkt. No. 10, ¶¶ 68-69). Throughout their time living at the Rental Property, Plaintiffs allege they encountered a variety of problems with the property that went unremedied. (*Id*, ¶¶ 95-116). Despite repeatedly reporting issues including a leaking HVAC system, a foul odor in the home and other signs of moisture intrusion, Plaintiffs allege that Defendants negligently failed to inspect and repair the issues in their home, even once

1

it became apparent that Plaintiffs' home was infested with black mold. (*Id.*). The black mold caused Plaintiffs' son to experience severe rashes, resulting in his hospitalization on two separate occasions, and which are documented in graphic detail in Plaintiffs' Amended Complaint. Plaintiffs bring claims of negligence, reckless infliction of emotional distress, negligent infliction of emotional distress, violation of the South Carolina Residential Landlord Tenant Act, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), negligent misrepresentation, fraud in the inducement and breach of contract against Defendants. (*See generally id.*).

## II. Legal Standard

Fed. R. Civ. P. 12(b)(6) permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (quotation marks and citation omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 1980). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully."

2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

Defendants seek to dismiss Plaintiffs' Amended Complaint in its entirety on a variety of grounds, arguing: (1) the Court lacks personal jurisdiction over Defendants Lendlease (US) Public Partnerships LLC ("Lendlease") and AMCC Development; (2) the Court lacks subject-matter jurisdiction over this case because Defendants are entitled to derivative sovereign immunity; (3) the federal-enclave doctrine bars Plaintiffs' claims to the extent they seek economic, emotional distress, and property damages; (4) Plaintiffs' Amended Complaint is deficient under Rule 8 standards because it employs group pleading; (5) Plaintiffs' claim for Reckless Infliction of Emotional Distress is not cognizable under South Carolina law; (6) Plaintiffs rely on puffery in support of their allegations regarding misrepresentations that fail to comply with Rule 9(b); (7) Plaintiffs have not pled a right to rely on Defendants' statements to sustain a fraudulent inducement claim; (8) Plaintiffs may not assert their breach of contract claim against Defendants who were not parties to the lease; and (9) Plaintiffs' claim for punitive damages should be rejected. (*See generally* Dkt. No. 12). The Court considers each basis for dismissal in turn.

#### A. Personal Jurisdiction Over Lendlease and AMCC Development

Defendants move for dismissal of Defendants Lendlease and AMCC Development Management LLC from the case, arguing that "Plaintiffs allege no facts establishing those entities' contacts with the forum." (Dkt. No. 12-1 at 4). Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a party to assert by motion the defense of lack of personal jurisdiction. When a defendant challenges the court's personal jurisdiction under Rule 12(b)(2), a plaintiff has "the

3

burden of proving" that jurisdiction exists "by a preponderance of the evidence." *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). "[W]hen, as here, a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *Id.*; *see also New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (noting that a plaintiff need only make a prima facie showing of jurisdiction when the court does not conduct an evidentiary hearing). In deciding whether a plaintiff has met this burden, the court construes all disputed facts and draws all reasonable inferences from the proof in favor of jurisdiction. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

A district court may assert personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state confers jurisdiction, and (2) the exercise of personal jurisdiction comports with constitutional due process. *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). The South Carolina long-arm statute "extend[s] to the outer limits of the due process clause." *Hidaria, USA, Inc. v. Delo, d.d.*, 783 S.E.2d 839, 542 (S.C. App. 2016); see also S.C. Code Ann. § 36-2-803(A). A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that requiring the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted).

Courts have recognized two types of personal jurisdiction: general and specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court can

4

assert general jurisdiction over a corporate entity only when the "continuous corporate operation within a state is thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). Thus, general jurisdiction requires a showing that "the defendant's activities in the state" were "continuous and systematic." *Carefirst*, 334 F.3d at 397. Specific jurisdiction is designed to protect a defendant from having to litigate a suit in a forum where it should not have anticipated being sued. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277-78 (4th Cir. 2009). To determine if specific jurisdiction exists, the court considers "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397. In analyzing the extent to which a defendant purposefully availed itself of the privilege of conducting activities within a State, a court examines "various non-exclusive factors" including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020). In determining whether the exercise of personal jurisdiction over an out of state defendant is constitutionally reasonable, courts consider the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the interest of the states in furthering fundamental social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Plaintiffs here argue that this Court has specific jurisdiction over Defendant Lendlease. (Dkt. No. 18 at 10). Plaintiffs make no argument at all in support of the Court's exercise of personal jurisdiction over AMCC Development, much less a prima facie showing to rebut Defendants' motion. The Court dismisses AMCC Development from the case with prejudice, and focuses its analysis on Plaintiffs' argument regarding the Court's jurisdiction over Defendant Lendlease.

Plaintiffs argue that "Lendlease maintained jurisdictional contacts with South Carolina relating to its management, oversight, ownership, construction and renovation of military housing in Laurel Bay, directly and through AMCC, including the Rental Property from which Plaintiffs' claims arose." (*Id.* at 10). Plaintiffs allege that Lendlease's conduct in this case is related to these contacts given that "Plaintiffs have alleged that Lendlease negligently failed to fulfill the duties attendant to Lendlease's management of the Rental Property and that such failures caused Plaintiffs' injuries." (*Id.*). As evidence that Lendlease purposefully availed itself of the privilege of conducting activities within South Carolina, they cite Lendlease's "entering [into] a partnership with the U.S. Navy and U.S. Marine Corps to manage, construct, and renovate military housing in Laurel Bay" and "Lendlease's involve[ment] in management of the properties in Laurel Bay,

6

including the Rental Property, even if Lendlease claims such management was ostensibly through AMCC." (*Id.* at 11).

In the Court's view, Plaintiffs seek to exercise jurisdiction over Lendlease by citing acts that are attributable to its subsidiary, AMCC. Generally, "the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). The Court is not persuaded that Lendlease's public statements on its website that it is the "Owner, Developer, Design Builder, [and] Asset Manager" of AMCC and "build[s] and operate[s] communities" is evidence that its contacts with South Carolina relate to the management of the Rental Property. (*See* Dkt. Nos. 18-2, 18-3). While Plaintiffs also allege that such contacts are evidenced by the fact that service and maintenance requests at properties managed by AMCC are submitted through a "Lendlease US Communities App," Plaintiffs do not allege that they submitted their service and maintenance requests through this app nor that they had any other contacts with representatives from Lendlease. (Dkt. No. 18-4).

To rebut Plaintiffs' jurisdictional showing, Defendant Lendlease submits a declaration by Greg Starkey, Vice President and Operations Director of Lendlease, averring that Lendlease did not build, own, manage or perform housing-related construction, renovation or demolition work at Plaintiffs' rental property. (Dkt. No. 12-2, ¶¶ 5-6). Plaintiffs complain that the Starkey Declaration "does not address other issues relevant to this jurisdictional inquiry" but fail to make a prima facie showing that Plaintiffs' claims are related to the contacts of Lendlease itself, rather than those of AMCC, with South Carolina.

To the extent Plaintiffs seek to pierce the corporate veil of AMCC to reach its parent entity by claiming that "Lendlease now seeks to distance itself from its involvement in Laurel Bay and

7

the Rental Property by hiding behind the corporate form of AMCC," Plaintiffs have not met their burden.

> [South Carolina] courts have outlined a two-prong test to determine whether a corporate veil should be pierced. The first part of the test requires an eight-factor analysis and looks to observance of the corporate formalities by the dominant shareholders. The second part requires that there be an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the individuals. In determining whether the corporate formalities were observed under the first prong of the *Sturkie* test, the courts consider eight factors:
> (1) whether the corporation was grossly undercapitalized;
> (2) failure to observe corporate formalities;
> (3) non-payment of dividends;
> (4) insolvency of the debtor corporation at the time;
> (5) siphoning of funds of the corporation by the dominant stockholder;
> (6) non-functioning of other officers or directors;
> (7) absence of corporate records; and
> (8) the fact that the corporation was merely a façade for the operations of the dominant stockholder.

*Mid-S. Mgt. Co. Inc. v. Sherwood Dev. Corp.*, 649 S.E.2d 135, 140–41 (S.C. Ct. App. 2007) (internal quotations omitted).  In order to pierce the corporate veil, the court must find that a number of the eight factors are present, but not all. *Id.*

Plaintiffs note that the Starkey Declaration "does not address . . . the corporate separateness of Lendlease and AMCC and AMCC PM" and "to what extent Lendlease managed the day-to-da operations of AMCC and AMCC PM related to the Rental Property" but do not make a plausible claim that the two companies are alter egos of each other. (Dkt. No. 18 at 12-13).  As a result, Plaintiffs have not made a prima facie case that the court has personal jurisdiction over Defendant Lendlease.  The Court dismisses Lendlease from the case with prejudice.

## B. Derivative Sovereign Immunity

Defendants move for dismissal as to the remaining Defendants because they are entitled to derivative sovereign immunity. (Dkt. No. 12-1 at 7). "[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) (quoting *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 583 (1943). In *Yearsley v. W.A. Ross Construction*, the U.S. Supreme Court held that a government contractor could not be held liable for erosion to the petitioners' land resulting from a construction project that Congress itself had authorized. *Id.* at 19-21. The Court explained that "that if th[e] authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." *Id.* at 20-21. "In other words, under *Yearsley*, a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *In re KBR, Inc., Burn Pit Litig.* (*Burn Pit III*), 744 F.3d 326, 342 (4th Cir. 2014). However, "[w]hen a contractor violates both federal law and the Government's explicit instructions, ... no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation." *Campbell-Ewald*, 577 U.S. at 166.

Plaintiffs argue that Defendants are not entitled to derivative sovereign immunity because they did not follow the government's explicit instructions and/or requirements in building and managing the Rental Property. (Dkt. No. 1-1, ¶ 20). In *Johnson v. Lendlease (US) Public Partnerships*, No. 7:21-CV-188-D (E.D.N.C. July 5, 2022), which involved the same defendants and many of the same claims at issue in this case, the district court rejected Defendants' argument that they were entitled to a sovereign immunity defense, reasoning that it "strains judicial

9

experience and common sense to conclude that the government's "explicit instructions" to defendants were to provide substandard housing and then repeatedly fail to remediate the problems with the housing to the detriment of servicemembers and their families" in light of Congress's goals behind the privatization of military housing—to provide better quality housing to servicemembers and their families. *Johnson v. Lendlease (US) Pub. Partnerships LLC*, No. 7:21-CV-188-D, 2022 WL 2447091, at *9 (E.D.N.C. July 5, 2022). This Court agrees with the *Johnson* court that while "Defendants' construction and maintenance of military housing might have been within the "thematic umbrella" of their government-authorized work . . . [Plaintiffs'] plausibly allege that defendants did not follow the government's 'explicit instructions'" and as a result are not entitled to derivative sovereign immunity at this stage of the case. *Id.* The *Johnson* Court also cited an additional basis from denying Defendants' motion to dismiss on immunity grounds at that time, citing the lack of evidence in the record by which the Court could determine whether Defendants acted in conformity with their contract. *Id.* (citing *In re KBR*, 744 F.3d at 345). For the same reasons, this Court denies Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).

### C. Federal-Enclave Doctrine

Defendants argue that Plaintiffs' claims for are barred to the extent they seek economic, emotional distress and property damages as a result of the federal enclave doctrine. "Generally, when an area in a State becomes a federal enclave, 'only the [state] law in effect at the time of the transfer of jurisdiction continues in force' as surrogate federal law." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611–12 (2019) (quoting *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 596 (1940)). And going forward, state law presumptively does not apply to the

10

enclave. *Id.* Congress has excepted personal injury claims from the federal-enclave doctrine by statute. 28 U.S.C. § 5001(b).

Defendants argue that the federal government acquired jurisdiction over Laurel Bay on May 19, 1958, when it purchased the property via condemnation, which became exclusive (and thus, subject to the federal enclave doctrine) later that same year. (Dkt. No. 12-1 at 12-13). Defendants explain that the "cession of legislative authority and political jurisdiction" sufficient to vest exclusive jurisdiction in the Federal Government over Laurel Bay is reflected in a letter dated November 6, 1958 from the Secretary of the Navy to South Carolina Governor Timmerman. *Id.* (citing *Paul*, 371 U.S. at 264 (explaining that federal acquisition of state land by condemnation is not sufficient to obtain exclusive jurisdiction over the land absent a cession of legislative authority and political jurisdiction); *see also* Dkt. No. 12-4) ("[E]xclusive jurisdiction is hereby accepted by the Secretary of the Navy on behalf of the Untied States of America . . . .")). They argue that the vast majority of Plaintiffs' claims did not exist under South Carolina law in 1958, and as a result are not cognizable now. (Dkt. No. 12-1 at 13). They also argue that at Section 5001's exception for personal injury claims applies to physical injury, but not emotional injury. (*Compare* Dkt. No. 12-1 at 11-12 *with* Dkt. No. 18 at 22).

Plaintiffs contend that "[w]hether Laurel Bay is a federal enclave is a question of fact" that "has not been verified." (Dkt. No. 18 at 20). They highlight that "Defendants have not authenticated the letter or offered any explanation as to how they came into possession of it" and cite a distinct position taken by Defendant AMCC in a different case—that Laurel Bay became a federal enclave in 1941 after South Carolina ceded it by statute to the Federal Government—as evidence "that the issue is unclear and requires discovery." (*Id.* at n.1). They also note that even if the Rental Property is located on a federal enclave, Plaintiffs' claims of negligence, reckless

11

infliction of emotional distress, negligent infliction of emotional distress and violation of the South Carolina Residential Landlord Act ("RLTA") should proceed against Defendants because they are personal injury claims. (*Id.* at 21).

Plaintiffs argue in the alternative that the federal enclave doctrine does not apply, regardless of the authenticity of the November 1958 letter, due to the choice of law provision in Plaintiffs' lease agreement which applies the RLTA and South Carolina state common law interpreting the Act to the Parties' contractual relationship. (Dkt. No. 18 at 28-29; Dkt. No. 18-14, ¶ 37). While this position was adopted by the district court in *Johnson*, Defendants cite a competing view by the district court in *Fischer v. Fort Belvoir Residential Communities* that the application of such a choice-of-law provision could "effectively abrogate the federal enclave doctrine" in declining to apply the choice of law provision to non-contractual claims. *Fischer v. Fort Belvoir Residential Communities LLC*, No. 122CV286RDALRV, 2024 WL 666067, at *5 (E.D. Va. Feb. 16, 2024).

The Court considers the question of whether Laurel Bay is a federal enclave to be a question of fact inappropriate for disposition at the motion to dismiss stage. It is true that "a court may consider a document outside the complaint at the motion to dismiss stage when the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016)). Here, the dispute about the Letter's authenticity is a factual dispute precluding resolution of this issue on a motion to dismiss. The Court denies Defendants' motion to dismiss on the grounds that Plaintiffs' claims are barred by the federal enclave doctrine.

### D. Group Pleading

Defendants argue that Plaintiffs' Amended Complaint relies on improper group pleading and "lack[s] the specificity Rule 8, *Twombly*, and *Iqbal* all demand." (Dkt. No. 12-1 at 18). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The purpose of Rule 8 is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation omitted).

Defendants complain that Plaintiffs make allegations against "Defendants" generally, rather than identifying specific Defendants, and improperly rely on "'on information and belief' assertions of Defendants' joint interest" to save their deficient pleading. (*Id.*). In their Amended Complaint, Plaintiffs allege:

> [E]ach of the Defendants has acted as a joint tortfeasor, agent of the others, joint venture participant, or has otherwise engaged in, and aided and abetted one another in, the joint enterprise of leasing military housing at Laurel Bay, as well as the other conduct and acts alleged herein. On information and belief, during all pertinent times, each of the Defendants was directly and materially involved in the relevant facts, acts, and omissions, so as to incur joint and several liability in this matter due to its direct and material involvement.

(Dkt. No. 10 at 5). Plaintiffs acknowledge that they "proceed[] to make collective allegations against 'Defendants' or 'Lendlease' without, in many instances, identifying the individual Defendants" but contend that they provide fair notice of their claims to Defendants, which is all that is required of Rule 8(a)(2). (Dkt. No. 18 at 31-32). They note that "Lendlease formed a joint venture to build, own and manage military housing via a convoluted corporate structure" such that

"Plaintiffs are entitled to discovery on the direct material involvement of each corporate entity as well as their conduct as agents of the others." (*Id.* at 32).

The Court finds that Plaintiffs' Amended Complaint provides Defendants AMCC and AMCC Property Management ("AMCC PM") with fair notice of the allegations against them. Plaintiffs' claims arise from Defendants' ownership and management of the Rental Property. (Dkt. No. 10, ¶ 2). Plaintiffs' Lease names AMCC as the "Owner" of the Rental Property and AMCC PM as the property manager or "Agent" authorized to act on AMCC's behalf. (*Id.*, ¶ 68). Plaintiffs allege that AMCC was responsible for "managing and maintaining the military houses at Laurel Bay" while AMC Property Management was "the designated property manager . . . which likewise had a duty to manage and maintain military houses for servicemember families including Plaintiffs." (*Id.*). Defendants thus have fair notice of the claims against them and Rule 8(a) does not warrant dismissal of this action.

### E. Reckless Infliction of Emotional Distress

Defendants move for dismissal of Plaintiffs' reckless infliction of emotional distress ("RIED") claim on the grounds that it is not a standalone cause of action under South Carolina law. (Dkt. No. 12-1 at 23). Plaintiffs respond that reckless intentional infliction of emotional distress is the same cause of action as intentional infliction of emotional distress ("IIED"), which Defendants do not contest that Plaintiffs' allegations fall short of. (Dkt. No. 18 a 34-35). In South Carolina, an IIED claim requires a showing by a plaintiff that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct;
>
> (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community;

14

> (3) the actions of the defendant caused plaintiff's emotional distress; and
>
> (4) the emotional distress suffered by the plaintiff was severe such that no reasonable [person] could be expected to endure it.

*Bass v. S.C. Dept. of Social Servs.*, 780 S.E.2d 252, 260-61 (S.C. 2015). The South Carolina Supreme Court has clarified that "[r]eckless infliction of emotional distress is merely a subset of intentional infliction of emotional distress" and is not a separate cause of action. *Gore v. Dorchester County Sheriff's Office*, 900 S.E.2d 423, 423 (S.C. 2024).

The Court finds that Plaintiffs have failed to plausibly allege an IIED/RIED claim where Plaintiffs allege throughout their Amended Complaint that Defendants' negligence caused them harm. (*See, e.g.*, Dkt. No. 10, ¶ 115 ("Evidence shows that as a result of Defendant's **negligent** failure to maintain 69 Beech, M.S. was exposed to pervasive toxic mold and moisture-related defects . . . ;"); *id.*, ¶ 109 ("Defendants **negligently** failed to follow industry standards for mold testing and/or remediation."); *id.*, ¶ 97 ("Plaintiffs submitted multiple work orders (approximately six) related to the defective HVAC system, but Defendants **negligently** failed to repair and/or replace the system as the Lease required.") (emphases added)). By definition, negligent acts are not intentional. As a result, Plaintiffs' IIED/RIED claim is subject to dismissal.

### F. Rule 9(b)

Defendants move for dismissal of Plaintiffs' claims of unfair and deceptive trade practices in violation of SCUTPA, negligent misrepresentation and fraud in the inducement on the grounds that Plaintiffs fail to plead the alleged misrepresentations underlying their claims with specificity in violation of Rule 9(b). (Dkt. No. 12-1 at 19). Rule 9(b)'s heightened pleading standard requires that a party alleging fraud or mistake "must state with particularity the circumstances constituting

15

fraud or mistake." Fed. R. Civ. P. 9(b). "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

The Court finds that Plaintiffs have alleged sufficient facts as to the misrepresentations underlying their SCUTPA, negligent misrepresentation and fraud in the inducement claims. Plaintiffs cite allegedly deceptive representations made by Defendants as to their housing in their Lease and incorporated Community Guidelines and Policies prior to Plaintiffs' signing of their lease in June 2021. (Dkt. No. 18 at 33) (citing Dkt. No. 10, ¶¶ 4, 63, 88, 99, 126, 130(g), 181 & Dkt. No. 18-14). In those documents, Defendants promised to "respond in accordance with the local, federal and state guidelines to repair or remedy" mold infestations and maintain safe and habitable housing for Plaintiffs. (Dkt. No. 10, ¶¶ 72-73). The Court is satisfied that Plaintiffs' pleading is sufficient to put Defendants on notice of the conduct for which they will have to defend themselves against at trial and that Plaintiffs have "substantial prediscovery evidence" of their claims. *See Harrison*, 178 F.3d at 784. Rule 9(b) does not warrant dismissal of Plaintiffs' misrepresentation claims.

### G. Breach of Contract

Defendants complain that AMCC is the only party that may be held liable for breach of contract as the only alleged party to the Lease Agreement. (Dkt. No. 12-1 at 22). Plaintiffs consent to the dismissal of their breach of contract claim against Defendant AMCC PM. (Dkt. No. 18 at 34).

### H. Fraudulent Inducement

Defendants move for dismissal of Plaintiffs' fraudulent inducement claim, arguing that Plaintiffs' failure to plead a right to rely on Defendants' representations or the existence of a confidential or fiduciary relationship with Defendants is fatal to their claim. (Dkt. No. 12-1 at 24). Plaintiffs maintain that "in the context of real property transactions, a tenant or buyer has a right to rely on representations made by a landowner regarding the condition of the property if the landowner had superior knowledge of the condition and the tenant or buyer was prevented by fraud from conducting an inspection, or where inspection would not disclose the condition at issue." (Dkt. No. 18 at 36).

"A party asserting a claim for fraud in the inducement to enter into a contract must establish (1) a representation, (2) its falsity, (3) its materiality, (4) knowledge of its falsity or reckless disregard of its truth or falsity, (5) intent that the representation be acted upon, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury." *Brown v. Stewart*, 557 S.E.2d 676, 680 (S.C. Ct. App. 2001) (internal quotation omitted). "[T]here is no right to rely, as required to establish fraud, where there is no confidential or fiduciary relationship and there is an arm's length transaction between mature, educated people." *Regions Bank v. Schmauch*, 582 S.E.2d 432, 445 (S.C. Ct. App. 2003). "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *O'Shea v. Lesser*, 416 S.E.2d 629, 631 (S.C. 1992). The question of whether a fiduciary relationship exists is a question of law. *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 715 (S.C. 2003).

In *Bryn v. Walker*, the South Carolina Supreme Court explained that a party has a right to rely on the representations of another "where the parties do not have equal knowledge and he to whom the representations are made has no opportunity to examine the property, or by fraud is prevented from making an examination, or where an ordinary inspection would not have disclosed the condition with respect to which the representation was made." *Byrn v. Walker*, 267 S.E.2d 601, 603 (S.C. 1980). The court went on to hold that where "the agent asserts special knowledge of the property and makes representations of facts, the truth of which are not reasonably ascertainable by the purchaser due to their latent nature, the purchaser can justifiably rely on those representations." (*Id.*).

Here, Plaintiffs argue that they lacked equal knowledge of the Rental Property "as lay renters limited in their ability to self-help" and thus had a right to rely on Defendants' representations that the property was safe and habitable "despite latent defect[s] such as water damage, water intrusion, and chronic unmitigated mold infestations—all conditions which are not reasonably ascertainable to renters such as the Plaintiffs." (Dkt. No. 18 at 37; Dkt. No. 10, ¶¶ 179-81). At this stage of the litigation, the Court finds that Plaintiffs have plead a right to rely on Defendants' representations as to the habitability of the Rental Property and denies Defendants' motion as to Plaintiffs' fraudulent misrepresentation claim.

### I. Punitive Damages

Defendants argue that Plaintiffs' claim for punitive damages based on Defendants' alleged failure to warn of housing defects at the Rental Property should be dismissed because "the First Amended Complaint is devoid of any facts that Defendants intentionally injured or invaded any of the Plaintiffs' rights." (Dkt. No. 12-1 at 25). Plaintiffs respond by citing the portions of their Complaint in which they plead facts alleging fraud in the inducement, intentional infliction of

emotional distress, negligent and reckless acts, negligent/reckless misrepresentation and negligent/reckless infliction of emotional distress, all of which are causes of action for which punitive damages are available. (Dkt. No. 18 at 38) (citing Dkt. No. 1, ¶¶ 127-46, 178-88). Aside from Plaintiffs' IIED/RIED claim, the Court finds that Plaintiffs have plausibly alleged claims for which punitive damages are recoverable and denies Defendants' motion to dismiss on this basis.

### IV. Conclusion

In light of the foregoing, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. (Dkt. No. 12). Defendants Lendlease and AMCC Development Management LLC are **DISMISSED** from this case. Plaintiffs' IIED/RIED claim is **DISMISSED**. Defendants' motion is **DENIED** as to the remainder of Plaintiffs' claims.

**AND IT IS SO ORDERED.**

 s/ Richard M. Gergel
Richard Mark Gergel
United States District Judge

October 30, 2024
Charleston, South Carolina